**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Scott P. Huberty, | ) | CASE NO.:  5:10CV2316 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Time Warner Entertainment Co., L.P., et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter appears before the Court on Plaintiff Scott Huberty's motion for sanctions against Defendant Time Warner and/or its counsel, Rachel Sankey.  The motion is DENIED.

Huberty relies upon Fed.R. Civ.P. 30(d)(2) in support of his motion.  Rule 30(d)(2) provides that "[t]he court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent."  Huberty contends that this standard has been met because Attorney Sankey improperly coached a witness, Linda Corrigan, during a break in a deposition.

In support of the motion, Huberty relied upon the affidavit of his girlfriend, Rosemarie Oaks.  Oaks swore in her affidavit as follows:

> 5. I overheard the attorney… tell Ms. Corrigan that she needed to make sure to say that Mr. Conti told her that Scott didn't want FMLA.

> 6. I also overheard her tell Ms. Corrigan that they needed to stay away from the conversations that she had with Scott Huberty and the emails.

1

7.    Finally, I overheard the attorney tell Ms. Corrigan that she should respond to any questions regarding FMLA with, "I don't recall."

Doc. 25-1 at 1-2.  As such, Huberty not only alleges that improper coaching took place, but he borders on alleging that Attorney Sankey suborned perjury.

Huberty's claim is meritless.   In part, Huberty relies upon Oaks' testimony. Oaks' testimony is suspect for several reasons.  First, Oaks' has a vested interest in the outcome of this litigation because of her relationship with Huberty.  Second, Oaks asks the Court to believe the following scenario.  Attorney Sankey is so concerned with being overheard by opposing counsel in a small office that she escorts her witness outside the building to have a conversation.  After taking that step, Attorney Sankey then speaks so loudly that Oaks can hear her clearly while sitting in a parked vehicle.  In addition, once Attorney Sankey walked outside, she proceeded with her client to walk down the sidewalk and stop immediately in front of the vehicle Oaks was sitting in.  To believe Oaks, she was no more than 3 to 4 feet from the conversation.  In addition, the Court would have to believe that Oaks overheard solely Attorney Sankey's statements to her witness and none of the responses.  Based upon those facts, Oaks' testimony is less than credible.

Additionally, the testimony of Huberty's counsel, Attorney Richard Gibbs, is also less than credible.  In his testimony, Attorney Gibbs admitted that Oaks attempted to tell him about the conversation during the deposition.  Attorney Gibbs indicated that he was busy and the conversation needed to wait.  From the Court's perspective, however, even a layperson would know the importance of informing Attorney Gibbs of this type of conversation.  The fact that Oaks did nothing to inform Attorney Gibbs during the deposition again undermines her credibility.

Immediately after the conclusion of the deposition, Oaks did speak to Attorney Gibbs.  Attorney Gibbs interpreted that conversation as follows:  "And clearly [Attorney Sankey] was trying to get her to answer questions a certain way, which I perceived to be at a minimum preparation, if not attempting to have the witness testify to things other than what the truth was."  Doc. 52 at 17.  When Oaks tried to give him further details, Attorney Gibbs responded that he did not have time to discuss the matter and proceeded back to the deposition.  At that time, Attorney Gibbs then reentered the building and spoke directly with Attorney Sankey.  He never mentioned this issue to her.

The Court finds the above timeline inherently lacking in credibility.  If Attorney Gibbs is to be believed, he is informed immediately following the deposition that opposing counsel may have instructed her client to be dishonest. Clearly, Attorney Gibbs could have filed a motion in this Court immediately to address the issue.  Attorney Gibbs declined to file such a motion.  While the deposition occurred on April 6, 2011, Attorney Gibbs never contacted opposing counsel about the alleged conversation.  Instead, on May 18, 2011, a full **six weeks** later*,* Huberty's counsel filed the pending motion for sanctions.

As the Court noted during the hearing on this matter, it will not ignore the fact that the motion for sanctions was filed exactly one day before the status conference in this matter.  With defense counsel flying in from Georgia, any response was entirely precluded.  In fact, the motion itself was not filed until 4:55 p.m. with the status conference set for 1:30 p.m. the following day.  There is simply no question in the Court's view that the motion was filed for strategic purposes.

The Court, however, also notes that the testimony presented in this matter is not entirely consistent for the defense either.  The deponent, Linda Corrigan, denied having

3

any conversation outside the building with Attorney Sankey. In contrast, Attorney Sankey admitted to leaving the building to have a conversation, but denied that the content of that conversation remotely resembled the allegations made by Oaks.

In resolving the issue of this conflict and the credibility of the witnesses, the Court was left with one objective piece of evidence – the transcript of the deposition. The deposition flatly conflicts with the allegations raised in the motion for sanctions.  For example, Oaks claimed that Attorney Sankey told Corrigan to respond "I don't recall" to FMLA questions and to "stay away" from conversations that Corrigan had with Huberty. However, in his pleadings, Huberty primarily complains that Corrigan stopped answering "I don't recall" and became *more* definitive after the break.  In essence, Huberty asserts that Corrigan did exactly the opposite of the alleged advice she received from her counsel.

Additionally, the Court has closely reviewed the entire deposition transcript on numerous occasions.  More than once, Huberty's counsel has alleged that there is a clear change in Corrigan's testimony before and after the alleged break and conversation.  This allegation is not at all supported by the transcript.  First, the questions posed to Corrigan are not identical before and after the break, so a direct comparison is not possible. Furthermore, there is simply no change in the tenor of Corrigan's deposition throughout the entire line of questioning.  If anything, Corrigan becomes more definitive because Huberty's counsel improperly continues to ask the same question using different wording.  It is clear that counsel was attempting to create conflicts by wording and rewording the same questions over and over.  As a result, Corrigan became more and

4

more definitive when answering the same question.  Rather than evidence of improper coaching, this is evidence that Corrigan became tired of responding to the same inquiry.

To the extent that Huberty raised the issue of a self-populating document and the fact that the witness used this term, that issue is not before the Court.  There is no evidence of any kind that this terminology was the result of coaching or preparation. Huberty appears to assert that the term is so unusual that it must be the result of coaching. Given the complete lack of evidence to support any such claim, it also cannot serve as a basis for sanctions.

As the Court indicated on numerous occasions, this is a very serious matter. Huberty and his counsel alleged serious misconduct by Attorney Sankey.  Huberty and his counsel went as far as to allege that Attorney Sankey violated at least three ethical rules when she offered evidence that she knew to be false.  At this time, the Court must note one further important fact:  testimony at the hearing indicated that even if the Court were to believe Oaks, the advice offered to Corrigan only encouraged her to tell the truth. Nothing in Oaks statement supports a finding that Attorney Sankey instructed her witness to give false information.  As such, despite making allegations that could derail an entire career, Huberty and his counsel offered no credible evidence to support them.

As detailed herein, the motion for sanctions has no merit and is DENIED.  In fact, the testimony in support is lacking in any credibility.  Moreover, the only truly objective evidence, the deposition transcript, makes it clear that the motion is frivolous. Accordingly, within 14 days of this order, Huberty's counsel shall show cause why they should not be sanctioned in the amount of the costs and fees incurred in defending against

5

this motion.    Within 14 days thereafter, defense counsel may file any responsive pleading.

       IT IS SO ORDERED.


November 14, 2011                              /s/ John R. Adams_____
                                               JUDGE JOHN R. ADAMS
                                              UNITED STATES DISTRICT COURT