UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Scott P. Huberty, | ) | Case No. 5:10CV2316 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolves Doc. 38, 46] |
| Time Warner Entertainment Co., et al., | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendants. | ) | AND ORDER |

This matter is before the Court upon a motion for summary judgment (Doc. 38) filed by Defendant Time Warner Entertainment Company, L.P. ("Time Warner") and a motion to strike (Doc. 46) also filed by Time Warner.  For the reasons stated herein, both motions are GRANTED.

**I.     Facts**

In March of 1979, Plaintiff Scott Huberty began working for Time Warner.  Huberty maintained this employment until November of 2008.  From roughly 2002 until his termination in 2008, Huberty worked as a warehouse driver for Time Warner.  In mid-November of 2008, Huberty apparently approached his supervisor about the need to take some time off, claiming stress in his life.  Huberty was eventually referred to human resources to deal with his request for time off.  Huberty then began taking time off and searching for a doctor to certify his medical condition.  Time Warner subsequently terminated Huberty, contending that during his leave he

was absent for three consecutive days and failed to call off on all three days in violation of company policy.

The instant suit was filed October 12, 2010 and contains four counts. Huberty alleges interference with his rights under the Family Medical Leave Act ("FMLA"), retaliation for exercising his FMLA rights, unjust enrichment, and breach of implied contract. Summary judgment briefing in the matter is now ripe. However, before addressing the issue of summary judgment, the Court must first resolve Time Warner's motion to strike.

**Motion to Strike**

In opposition to the motion for summary judgment, Huberty relies upon an affidavit from Dr. Abbas Sadeghian. Time Warner has moved to strike the affidavit, contending that Huberty never supplied an expert's report from the doctor prior to the close of the discovery. Huberty has opposed the motion, and Time Warner has replied.

The Court put a Case Management Plan in place in this matter on February 3, 2011. That plan placed a deadline on **all** discovery with an end date of May 18, 2011. Despite that clear deadline from the Court, Huberty never provided an expert report from Dr. Sadeghian. In response, Huberty contends that no such report is due yet under the language of Fed. R. Civ. P. 26(a)(2)(D) which provides as follows for expert reports:

> A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
>
> (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
>
> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

2

Huberty contends that no order was put in place regarding the timing of expert disclosures and therefore he has until 90 days before trial. Since no trial date has been set, Huberty contends his obligation has not been triggered. Huberty is incorrect.

First, the Court finds persuasive the case law cited by Time Warner with respect to whether the Court's scheduling order was sufficient to alter the default deadlines in Rule 26. Specifically, the Eighth Circuit has noted as follows: "We find Derby's argument that the discovery deadline did not include expert testimony because it was not specifically mentioned in the order to be wholly without merit." *Derby v. Godfather's Pizza, Inc.*, 45 F.3d 1212, 1215 (8th Cir. 1995). However, even absent this authority, the Court would find Time Warner's argument to be persuasive. The Court was abundantly clear that any and all discovery would be completed by its deadline. Huberty never sought to extend this deadline.

Furthermore, the Court will not ignore that correspondence between the parties indicated that the expert report was specifically requested and that Huberty intended to provide it *during* discovery. Having failed to timely disclose the report, Huberty may not rely upon it to oppose summary judgment.[1] The motion to strike is well taken.

**II.     Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[1] As will be shown below, even if the affidavit is considered, summary judgment is appropriate.

*Id*. (quoting former Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed.R. Civ.P. 56(e) states as follows:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> …
>
> (2) consider the fact undisputed for purposes of the motion; [or]
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

**III.    Legal Analysis**

    **A. <u>FMLA Claims</u>**

Huberty's first two claims focus upon interference with his FMLA rights and retaliation for the exercise of those rights.

> "The FMLA entitles an 'eligible employee' to up to twelve weeks of leave per year if the employee has a 'serious health condition' that prevents the employee from performing the functions of her job." *Hunter v. Valley View Local Schs.*, 579 F.3d 688, 690 (6th Cir. 2009) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA provides a private right of action to employees to protect their rights to such leave under two different theories: the "interference" or "entitlement" theory, under which employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights, 29 U.S.C. § 2615(a)(1); and the "retaliation" or "discrimination" theory, under which employers may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA, § 2615(a)(2). S*ee Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

*Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010). To prevail under either theory, Huberty must prove that he was entitled to FMLA leave. *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577-78 (6th Cir. 2007).

To prevail on his interference or retaliation claims, therefore, Huberty must show that he sought leave for an FMLA-qualifying reason, namely, that he had a "serious health condition" that prevented him from doing his job. 29 U.S.C. § 2612(a)(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care ... or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Huberty does not contend that he ever required inpatient care, so his claim is dependent upon a finding that he satisfied the continuing treatment prong discussed above. Department of Labor regulations define "continuing treatment" as "[a] period of incapacity (i.e., inability to work ...) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) [t]reatment two or more times by a health care provider ... or (B) [t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(2)(i) (2006) (amended 2009) (emphasis omitted).

5

Time Warner contends that Huberty cannot demonstrate a serious health condition. The Court agrees.

Huberty contends that he has demonstrated a serious health condition through two forms of evidence. First, Huberty relies upon his own testimony. Second, Huberty relies upon the affidavit of Dr. Sadeghian discussed above. This combination of evidence is insufficient to meet Huberty's burden.

First, the Court rejects any notion that Huberty's testimony standing alone is sufficient to demonstrate a serious health condition. In support, Huberty rather blatantly misstates the holding in *Branham*. Huberty's brief in opposition cites *Branham* and contends that "Testimony from Plaintiff as to inability to perform essential function of job sufficient to demonstrate incapacity." Doc. 42-1 at 13. However, the Court in *Branham* specifically noted as follows: "She submits her testimony, her medical records, and Nurse Practitioner Seefeldt's certification as evidence of that incapacity." *Branham*, 619 F.3d at 570. Thus, *Branham* does not support a claim that a plaintiff's own subjective analysis is sufficient to demonstrate a serious medical condition.

Instead, there is an abundance of case law that makes it clear that Huberty's own subjective assessment of his health cannot be used to demonstrate a serious health condition. A colleague on this Court has noted as follows with respect to this burden:

> It does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work. Rather, it means that a "health care provider" has determined that, in his or her professional medical judgment, the employee *cannot* work (or could not have worked) *because* of the illness. If it were otherwise, a note from a spouse, parent, or even one's own claim that one cannot work because of illness would suffice. Given the legislative history surrounding its enactment, the FMLA cannot be understood to establish such liberal standards for its application.

6

*Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997) (citation omitted) (emphasis sic).

Additionally, the affidavit of Dr. Sadeghian does not assist Huberty in meeting his burden. Huberty concedes that he never saw a doctor prior to taking leave from Time Warner. Furthermore, Huberty admits that it was nearly a year after his termination before he ever sought treatment for an alleged serious medical condition. Huberty contends, by relying on this affidavit, that his continuing treatment did not begin until roughly a year after his termination. In that regard, the Court again agrees with the persuasive authority cited by Time Warner. In *Jones v. Denver Public Schools*, 427 F.3d 1315 (10th Cir. 2005), the Tenth Circuit held that "under the regulations defining 'continuing treatment by a health care provider,' the '[t]reatment two or more times' described in § 825.114(a)(2)(i)(A) must take place during the 'period of incapacity' required by § 825.114(a)(2)(i)." *Id.* at 1323. In so holding, the *Jones* Court noted an apparent different holding from a member of this Court in *George v. Associated Stationers*, 932 F.Supp. 1012, 1015 (N.D.Ohio 1996). However, even in *George*, the employee was seen at least once during the period of incapacity.

The dangers associated with an indefinite time frame for treatment were also highlighted in *Jones*:

> Moreover, as Mr. Jones's case aptly demonstrates, the indefinite timeframe reading would place employers in a position of uncertainty regarding their FMLA obligations. At the time he returned to work, Mr. Jones had undergone only one treatment in connection with his back injury, and on any reading had not yet qualified for FMLA leave. When the District announced his termination, therefore, it acted legally. According to Mr. Jones, however, his follow-up visit to Dr. Kramer two weeks later retroactively made the District's conduct unlawful. This makes it exceedingly difficult for the employer to know what it has to do to comply with the law. It also risks frustrating the exercise of certification rights granted to employers by the FMLA. See 29 U.S.C. § 2613 (entitling an employer to require certification by a health care provider, and to require that employees obtain a second opinion, in connection with requests for leave under §

7

> 2612(a)(1)(D)). At the same time, reading the regulation to allow an indefinite timeframe for the second doctor's visit would invite strategic behavior by plaintiffs, who could schedule a second visit to "determine if a serious health condition exists" long after all symptoms have subsided, solely to bolster their claim of entitlement to FMLA leave in anticipation of litigation.

*Jones*, 427 F.3d at 1322-23.  This is precisely what occurred in this matter.  At the time of his termination, Huberty had *never* seen a health care provider for his alleged illness.  Accordingly, under Huberty's interpretation of "continuing treatment," he became eligible for FMLA leave roughly 12 months *after* his termination because that is the date upon which he was engaged in continuing treatment.  Such a result flies in the face of the intent of Congress when enacting the FMLA.

Finally, the Court notes that if it were necessary to reach the issue, the Court would also find that Dr. Sadeghian's affidavit lacks sufficient reliability to deem it admissible.  First, the affidavit is simply conclusory.  Sadeghian claims he tested Huberty on two occasions.  He does not describe the testing, nor does he even name the testing.  Sadeghian also concludes that he would have taken Huberty off work "for a period of no less than six weeks" due to his symptoms.  Sadeghian then concludes that Huberty "has maintained a constant diagnosis of anxiety and depression since" his termination.  In contrast, Huberty conceded that Sadeghian never placed any restrictions on him during treatment.  If Huberty had truly maintained this same diagnosis, then it follows that at a minimum, Sadeghian would have put in place similar restrictions.  Instead, Sadeghian's opinion falls squarely within the fears raised in *Jones,* i.e., that a plaintiff would seek out treatment solely to bolster an FMLA claim.

Even assuming that Huberty could demonstrate a serious medical condition, his interference claim must fail.  "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA

8

rights for engaging in the challenged conduct." *Edgar v. JAC Products*, 443 F.3d 501, 508 (6th Cir. 2006). In *Allen v. Butler County Commissioners*, 331 Fed. Appx. 389 (6th Cir. 2009), the Sixth Circuit was asked to answer whether an employee could be required to comply with the reasonable requirements of an employer's sick leave policy while on FMLA leave. In finding that such a requirement was permissible, the Court noted that other circuits had allowed such requirements to be enforced. *Id.* at 395 (citing *Gilliam v. U.P.S.*, 233 F.3d 969 (7th Cir. 2000); and *Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005)). The *Allen* Court then went on to hold that employers could enforce their reasonable leave policies even during FMLA leave. *Allen*, 331 Fed. Appx. at 396. Accordingly, Time Warner was permitted to enforce its call-off policy.

In an attempt to defeat this assertion, Huberty raises two arguments. First, Huberty contends that there exists a factual dispute regarding whether he called off. Second, Huberty contends that Time Warner's conflicting policies make it unclear whether he was required to call off. Neither argument has merit.

The Court has been hands-on in this matter with respect to whether Huberty actually called off during his absence. During the initial scheduling conference in this matter, the Court highlighted that phone records would likely be dispositive of the issue and very enlightening to both sides. In response, Time Warner attempted to track down these phone records. Those efforts were hampered by Huberty's ever-changing story. In the end, Huberty gave **four** separate phone numbers from which he may have called in sick. Time Warner sought out and received the phone records for every one of these phone numbers. Every document demonstrates that Huberty did not make the calls that he claims to have made in his deposition. Furthermore, during his deposition, Huberty even conceded that it was possible that he was confused on which

9

dates he may have called off. As the objective evidence defeats any claim that Huberty made the calls, there is no *genuine* issue of material fact surrounding the factual basis that Time Warner's alleges in support of Huberty's termination.

Furthermore, the Court's finds nothing contradictory within Time Warner's policies. Time Warner's employee manual discusses FMLA leave, including the process for applying for such leave and the employee requirements for maintaining that leave. At the end of the FMLA section, the policy provides: "If you take leave because of your own serious health condition … contact your supervisor on a regular pre-scheduled basis regarding your intention to return to work." Doc. 42-9 at 26. The policy also contains an attendance policy that provides that "[i]t is your responsibility to report your absence and the reason for the absence to a supervisor in your department each day you are absent." Doc. 42-9 at 38. Huberty appears to contend that because he sought FMLA leave, he was not required to comply with the latter policy for calling off. The Court does not agree with this interpretation.

If the Court were to interpret the policies in the manner prescribed by Huberty, an employee could simply take time off any time they desired and then after-the-fact claim that no call off was necessary because the leave was taken pursuant to FMLA. Instead, the provision for contacting a supervisor quite clearly contemplates that provision only going into effect upon the *approval* of FMLA leave. Any other reading would render the provision "regarding your intention to return to work" meaningless. As such, Huberty has failed to demonstrate any conflict in the policies.

Finally, the Court notes that there is no genuine issue of fact surrounding whether Huberty has demonstrated the causal connection necessary to support his retaliation claim. Huberty concedes, as he must, that temporal proximity alone is insufficient to demonstrate a

10

causal connection between his alleged protected FMLA activity and his termination. Huberty's other evidence consists of his argument that he in fact called off work and that the policies are contradictory. Having rejected both of these arguments above, it follows that no genuine issue of fact remains and Huberty has failed to satisfy the causal connection aspect of his retaliation claim.

Based upon the above, Time Warner met its burden to demonstrate that there was no genuine issue of material fact with respect to either of Huberty's FMLA claims. Huberty has not met his reciprocal burden. As Huberty was not entitled to FMLA leave, his interference and retaliation claims must fail. Furthermore, Time Warner provided a legitimate reason for Huberty's termination, and Huberty failed to demonstrate a genuine issue of material fact regarding whether such a reason was pretextual. Therefore, for numerous reasons, the FMLA claims fail as a matter of law.

### B. Unjust Enrichment Claim and Breach of Implied Contract Claim

In his final two claims, Huberty contends that he is entitled to be paid for his unused sick time. The Court finds no merit in these contentions.

Despite pleading two different theories of relief, Huberty has been unable to offer a single legal authority that would suggest either one of his claims is viable. "It is a simple hornbook rule that a contract implied in fact must embody all the elements of an express contract, including an actual agreement between the parties." *Contship Containerlines, Inc. v. Howard Industries, Inc.*, 309 F.3d 910, 913 (6th Cir. 2002). It is unclear what legal or factual theory Huberty is pursuing under this claim. Huberty's sole factual support appears to be that he accrued sick time while at Time Warner and therefore he should be paid for it following his termination. There is no evidence, of any kind, that Time Warner ever gave any indication that

unused sick time would be paid to its employees.  Huberty admits, as he must, that the employee manual is silent on the issue of compensation for unused sick time.  Furthermore, Time Warner employees testified that it was not the policy of the company to pay out unused sick time to terminated employees.  Huberty has offered no evidence to rebut these claims.

Additionally, to prevail on a claim of unjust enrichment, Huberty must prove the following elements: (1) he conferred a benefit on Time Warner; (2) Time Warner had knowledge of the benefit; and (3) Time Warner retained the benefit under circumstances where it would be unjust for them to retain that benefit without payment.  *Trammell v. McCortney*, 2011 WL 6740840, at *2 (Ohio App. Ct. Dec. 21, 2011).  It is doubtful that Huberty has met any of these elements.  First, if Huberty's contention is that the benefit he conferred on Time Warner was the fact that he showed up to work, Huberty was obligated to do so by contract – a contract that paid Huberty for working.  However, even assuming that Huberty provided some abstract benefit by not being sick *and* that Time Warner was aware of that fact, Huberty cannot demonstrate that it would be unjust for Time Warner to retain the benefit.  As noted above, there is nothing to suggest that Huberty was ever informed that his unused sick time would be paid out.  Accordingly, there is nothing unjust about Time Warner refusing to pay out that unused sick time.

Huberty has offered no evidence of any agreement regarding his sick time.  Accordingly, his claim for breach of an implied contract must fail.  Likewise, Huberty has offered no viable legal authority to support his claim for unjust enrichment and the undisputed facts do not support such a claim.  Both these claims fail as a matter of law.

## IV. Conclusion

Time Warner's motion to strike is GRANTED.  Time Warner's motion for summary judgment is GRANTED.  The complaint is hereby DISMISSED.

IT IS SO ORDERED.

DATED: February 8, 2012              /s/ John R. Adams
                                     JOHN R. ADAMS
                                     UNITED STATES DISTRICT JUDGE